IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| S. DONALD SUSSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2013-125 |
| ) | |
| PCGNY CORP. and KEMPER SYSTEM ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### REPORT AND RECOMMENDATION

Before the Court is defendant Kemper System America, Inc.'s ("Kemper") motion [DE 7] to dismiss the complaint against it and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, respectively.[1] Plaintiff filed a response and Kemper replied. [DEs 10, 11]. At a hearing on August 14, 2014, the Court ordered limited discovery on the issue of arbitrability.[2] Thereafter, plaintiff and Kemper submitted briefs on their respective positions based on the discovery. [DEs 31, 34, 36]. On February 5, 2015, the Court heard further argument on the motion.

### I.  STATEMENT OF FACTS

Kemper manufactures waterproofing products. Construction projects utilizing Kemper's products are generally eligible for Kemper's "Kemperol System 20-Year Premier ND Limited

---

[1] Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4; *accord Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (stating the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute"). Here, diversity jurisdiction exists over the underlying substantive dispute under 28 U.S.C. §1332. Thus, this Court has jurisdiction to decide Kemper's motion to compel arbitration.

[2] *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013).

Warranty & Service Agreement, Workmanship and Materials" (the "NDL Warranty")[3] upon satisfaction of the following conditions: (1) installation of Kemper products by an authorized applicator; (2) the authorized applicator's submission of the completed Project Approval and Warranty Statement ("Warranty Statement") form;[4] and (3) the authorized applicator's written request for the issuance of the NDL warranty for the project.[5]

In 2010, plaintiff began planning for construction work at his St. John property ("Iguana Point"). The proposed construction included installation of waterproofing materials at a number of locations at Iguana Point, including its two pools (the "Project"). Between April and August of 2010, plaintiff's construction manager, Geoffrey Miles, contacted Kemper regarding the use of Kemper materials on the Project and the availability of the NDL Warranty.[6] On August 3, 2010, Kemper's Brian Kelly emailed Miles regarding the scope of the work required for the Project.[7] The August 2010 email included a sample specification guide regarding Kemper's application requirements and a Warranty Statement form.[8] The Warranty Statement form lists Kemper's various warranties, including its NDL Warranty, and provides that the applicator should "Refer to Warranty Availability and Fee Schedule for project eligibility description of warranties and associated fees."[9]

---

[3] As described in Kemper's sworn answers to interrogatories (Def.'s Disc. Br., Ex. A, Def.'s Resp. Interrog. Nos. 4, 7 [DE 34-1 at 6, 8-9]), a written warranty applicable to a particular installation is delivered at the end of a project, once the project is deemed to have qualified for the warranty.

[4] *See* Def.'s Disc. Br., Ex. B, Bates Nos. 4-9 [DE 34-2]

[5] Def.'s Disc. Br., Ex. A, Def.'s Resp. Interrog. No. 7 [DE 34-1 at 9].

[6] Def.'s Resp. Interrog. No. 2 [DE 34-1 at 3].

[7] *Id.*; Def.'s Disc. Br., Ex. B, Bates Nos. 1-3 [DE 34-2].

[8] Def.'s Disc. Br., Ex. B, Bates Nos. 2-9 [DE 34-2].

[9] *Id.*, Bates No. 2.

Commencement of construction on the Project began in 2011. On January 26, 2011, plaintiff entered into a contract with PCGNY Corp. ("PCGNY"), a Kemper-authorized applicator,[10] to procure and install Kemper materials on the Project.[11] The contract provided that PCGNY's "[w]ork will be completed based on Kemper . . . requirements for 20 years NDL warranty."[12]

In November 2012, following PCGNY's completion of the Project, it was discovered that the waterproofing materials had failed at the two Iguana Point pools.[13] That same month, Miles reported the issue to Richard Doornink, Kemper's managing director, and sought warranty coverage. Specifically, Miles claimed the Project defects were covered under a "warranty [] certified by Kemper Rep[resentatives] for the period of 20 years."[14] Miles further contended that a Kemper representative had given him "a folder with the warranty when the Kemper rep[resentative] inspected the project."[15] In a December 1, 2012 letter addressed to Doornink, plaintiff's former counsel demanded Kemper honor its warranty obligations pursuant to the "express, written 20 year warranty" for the Project.[16]

On an unspecified date thereafter, Kemper determined that no executed NDL Warranty existed for the Project because PCGNY had failed to register it with Kemper's technical

---

[10] Def.'s Resp. Interrog. No. 2 [DE 34-1 at 4].

[11] Compl. Ex. A [DE 1-2].

[12] *Id.*

[13] Compl. ¶¶ 27-28.

[14] Pl.'s Disc. Br., Ex. 1, Bates Nos. 42-43 [DE 31-1]; Def.'s Interrog. Resp. No. 6 [DE 34-1].

[15] Def.'s Interrog. Resp. No. 2 [DE 34-2]; Def.'s Disc. Br., Ex. B, Bates Nos. 42-43 [DE 34-2 at 10].

[16] Pl.'s Disc. Br., Ex. 7, Bates Nos. 49-50 [DE 31-7].

*Sussman v. PCGNY Corp. & Kemper Sys. Am.*
Civil No. 2013-125
Page 4

department and "neither PCGNY nor [plaintiff's] representatives requested that [the NDL Warranty] be executed after completion of the Project in March 2011."[17] Nevertheless, on April 5, 2013, Doornink, on behalf of Kemper, executed a form NDL Warranty for the Project.[18] No other signatures appear on that document. The NDL Warranty includes a provision requiring "any controversy or claims relating to the System" be resolved in arbitration.

In December 2013, plaintiff filed this diversity action against PCGNY and Kemper. Plaintiff brings the following claims against Kemper: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness for particular purpose. Plaintiff alleges that Kemper supplied defective products, and throughout the complaint refers in various forms to "Kemper's 20-year NDL (no-dollar-limited) warranty."[19] According to Kemper, plaintiff's claims are subject to mandatory arbitration pursuant to the terms of the NDL Warranty. Plaintiff disagrees, arguing the express warranty upon which he bases his claims "consists of oral representations [that Kemper] made to [] [p]laintiff prior to or at the time of purchase of Kemper's products and their subsequent installations." Pl.'s Resp. at 3 [DE 31].

## II.  LEGAL STANDARD

In considering a motion to compel arbitration, a district court must apply either a motion to dismiss or a motion for summary judgment standard. Where "it is apparent" based on the complaint and supporting documents "that certain of a party's claims are subject to an

---

[17]  Def.'s Interrog. Resp. No. 7 [DE 34-1 at 8-9].

[18]  *Id.*, No. 6 [DE 34-1 at 7]; Ex. A [DE 8-1]. Plaintiff argues that neither he nor his counsel saw the executed document before the litigation was commenced. For reasons explained more fully below, this circumstance, if true, would not alter the Court's ultimate finding.

[19]  *See e.g.*, Compl. [DE 1] at ¶¶ 16, 17, 21, 25, 63, and 64.

enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). Where arbitrability is not apparent, or if the party seeking to avoid arbitration has put forth additional facts sufficient to place the agreement to arbitrate in issue, a motion to compel arbitration should be considered under a summary judgment standard, after providing the parties the opportunity for limited discovery on the issue of arbitrability. *Id.*

Here, the Court ordered limited discovery as plaintiff put forth evidence placing the existence of a written warranty (and thus an agreement to arbitrate) at issue. Accordingly, the Court applies the summary judgment standard to Kemper's motion. Under this standard, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking to compel arbitration bears the initial burden of showing that the agreement at issue requires arbitration. If the movant meets this burden, the party seeking to avoid arbitration must "go beyond the pleadings" and by either affidavits, depositions, answers to interrogatories, or admissions on file, "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Guidotti*, 716 F.3d at 773. "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014).

### III. DISCUSSION

The FAA establishes a "strong federal policy in favor of the resolution of disputes

through arbitration."[20] *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014). "[T]he Act [i.e., FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible.[21] *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Nonetheless, there is also a strong legal principle that, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). Accordingly, prior to compelling arbitration pursuant to the FAA, a court must first determine that (1) a valid agreement to arbitrate exists and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. Courts rely on the principles of applicable state law in making this determination. *See Golden Gate Nat'l Senior Care, LLC v. Brooks*, 2014 U.S. Dist. LEXIS 134280, at *32 (M.D. Pa. Sept. 24, 2014) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)); *accord Browne v.*

---

[20]   The FAA applies to a contract "evidencing a transaction involving commerce to settle by . . . or submit to arbitration" any controversy arising out of that contract. 9 U.S.C. § 2. The FAA defines "commerce" as "commerce among the several States . . . or in any Territory of the United States . . . ." *Id.* § 1; *see Sewer v. Paragon Homes*, 351 F. Supp. 596, 598 (D.V.I. 1972) (holding the FAA "applies to mandate stays of legal proceedings conducted in the District Court of the Virgin Islands"). The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The Supreme Court has further explained the phrase "evidencing a transaction" means only that the transaction turns out, in fact, to involve interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).

   The FAA's broad interstate commerce requirement is satisfied in this case. The purchase transaction was between Kemper, a New York company, and plaintiff, a resident of the state of Maine. The materials purchased were for plaintiff's U.S. Virgin Islands residence. Accordingly, the purchase transaction did, in fact, involve interstate commerce.

[21]   *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (courts are required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration"); *Browne v. ACUREN Inspection, Inc.*, 2014 U.S. Dist. LEXIS 43965, at *3 n.2 (D.V.I. Mar. 31, 2014) (noting "[t]he Virgin Islands Supreme Court has also recognized the strength of the policy favoring arbitration where a valid arbitration agreement exists") (citing *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 191-92 (2009)).

*ACUREN Inspection, Inc.*, 2014 U.S. Dist. LEXIS 43965, at *4 (D.V.I. Mar. 31, 2014). A "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers Antitrust Litig.,* 700 F.3d 109, 116 (3d Cir. 2012); *see* 9 U.S.C. §§ 3-4.

A. **Whether a valid arbitration agreement exists**

Kemper does not – and indeed cannot – argue that plaintiff or anyone else on behalf of plaintiff signed an NDL Warranty form that included the arbitration provision. Rather, Kemper argues that plaintiff – although a non-signatory – is equitably estopped from denying his obligation to arbitrate, as contained in that NDL Warranty, based on the "knowingly exploits" theory of equitable estoppel.[22]

A non-signatory may be bound to arbitrate a dispute when "traditional principles of state law allow a contract to be enforced . . . against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted). Under the "knowingly exploits" theory of estoppel, a "non-signatory may be bound by an arbitration clause if [he] embraces the agreement and directly benefits from it." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014).[23] That is, a non-

---

[22] *See* 22 A.L.R.6th 387 (explaining the "knowingly exploits" theory "differs from traditional equitable estoppel in that it contains no requirement of justifiable reliance" and is a "unique body of 'equitable estoppel' law that is peculiarly applicable to arbitration cases involving a non-signatories").

[23] A court "must expressly consider 'whether the relevant state contract law recognizes [the theory relied upon by the signatory] as a ground for enforcing [a] contract[] against" a non-signatory. *Flintkote Co.*, 769 F.3d at 220 (alterations added) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Here, the Court must first determine which state law governs Kemper's motion to compel arbitration – an issue addressed by neither party. A federal court sitting in diversity is required to apply the conflict of law principles of the forum state. *Klaxon Co. v. Stentor Electrical Mfg. Co.*, 313 U.S. 487 (1941). Accordingly, Virgin Islands choice-of-law principles govern the determination of which jurisdiction's law applies in resolving the substantive claims of the instant case. In determining the applicable law in contract matters, the Court considers and weighs the following factors: (1) the

signatory party may be estopped from avoiding arbitration where the party has reaped or seeks to reap direct benefits from the agreement containing the arbitration clause. "This prevents a non-signatory from 'cherry-picking' the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." *Invista S.à.r.l. v. Rhodia, SA*, 625 F.3d 75, 85 (3d Cir. 2010).

Based upon the entire record, the Court finds there are no genuine issues of material fact as to the existence of an obligation on the part of plaintiff to arbitrate with Kemper, based on the NDL Warranty. First, the competent evidence indicates that plaintiff sought and bargained for the NDL Warranty from the planning stages through the completion of the Project.[24] This

---

place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation and place of business of the parties. *Kressen v. Federal Ins. Co.*, 122 F. Supp. 2d 582, 590 n.10 (D.V.I. 2000) (citing Restatement (Second) of Conflict of Laws § 188); *see Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson*, 2014 U.S. Dist. LEXIS 112570, at *33 (D.V.I. Aug. 13, 2014) (acknowledging the Virgin Islands Supreme Court's ruling that it no longer "mechanistically follow[s] the Restatements" but "employ[ing] the language of the most recent Restatements because the Virgin Islands Supreme Court has noted 'that a strong preference exists for following the most recent Restatement over an older version' and this Court is unaware of any statutes or Virgin Islands Supreme Court precedent requiring it to deviate from the most recent Restatements") (quoting *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (2011)). While the place of contracting and negotiation of the parties' contract-based dispute is not clear, the place and location of the property and the project in dispute is the Virgin Islands, which is also plaintiff's part-time residence. *See* Compl. ¶ 43. Accordingly, the Court finds that Virgin Island law governs.

Having determined that this matter is governed by Virgin Islands law, the Court must next determine whether the Virgin Islands recognizes the "knowingly exploits" theory of equitable estoppel. Based on this Court's research, Virgin Islands courts have not had occasion to consider whether an arbitration clause may be enforced against a non-signatory pursuant to this theory. Therefore, this Court's "function is to look, as best [it] can, into the minds of the members of the [Virgin Islands] Supreme Court, and to ascertain their likely disposition of this case." *Kramer v. Thompson*, 947 F.2d 666, 677 (3d Cir. 1991). Although this prediction is not an easy one, *see Yohannon v. Keene Corp.*, 924 F.2d 1255, 1264-65 (3d Cir. 1991) (noting "[t]he inherently difficult task of predicting what a state supreme court will do when the state's decisional law is unclear on the point at issue"), this Court's review of Third Circuit case law leads it to conclude that the Virgin Islands Supreme Court would adopt this special theory of equitable estoppel to compel arbitration against a non-signatory to an arbitration agreement. *See, e.g., Flintkote Co.*, 769 F.3d at 221 (applying Delaware law); *Griswold*, 762 F.3d at 271 (applying Pennsylvania law); *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343 (D.N.J. 2012) (suggesting New Jersey recognizes the "knowingly exploits" theory of estoppel but finding the non-signatory plaintiffs did not receive any direct benefits of contract containing an arbitration clause).

[24]   Defendant offered evidence in the form of sworn interrogatory responses. Plaintiff, however, relied on argument, without reference to any sworn statements or other similar evidence. While plaintiff appeared surprised by the requirement to provide such evidence, the Court reminded the parties that during the August 14, 2014

evidence includes (1) the August 2, 2010 email from Kelly to Miles regarding Kemper application requirements, (2) the Warranty Statement, which listed various warranties including the NDL Warranty and referred the applicator to a documentation regarding "project eligibility description of warranties;"[25] (3) hiring a Kemper-authorized applicator; and (4) plaintiff's construction manager's November 2012 email exchanges wherein he insisted that a "warranty was certified by Kemper Reps for the period of 20 years" and his (apparently erroneous) belief that he in fact was provided with a hard copy of said warranty. Second, the undisputed facts indicate that the terms of Kemper's standard 20-year NDL warranty, including the arbitration provision, have been in existence prior to 2010 and remained unchanged through April 5, 2013 – the date of the NDL Warranty for the Project.[26]

Moreover, plaintiff cites no evidence, documentary or otherwise, to support either the existence of a separate oral warranty or the denial of an agreement to arbitrate with Kemper. Plaintiff merely relies on the fact that he could not have agreed to arbitrate given a written NDL Warranty applicable to the Project was not provided to him until sometime after April 2013. That Kemper did not furnish plaintiff with his NDL Warranty until well after completion of the Project does not alter the Court's conclusion that plaintiff agreed to be bound by the terms of a standard NDL warranty. In addition to having an opportunity to avail himself of the terms of a

---

hearing, both agreed that the summary judgment standard applied to the arbitration determination. *See Celotex Corp.,* 477 U.S. at 323; *accord Guidotti,* 716 F.3d at 773.

Interestingly, plaintiff for the first time at the February 5, 2015 hearing argued that he was not bound by the warranty's terms because he had not paid for the warranty. The Project's NDL Warranty contains language stating it is not effective until "Kemper . . receives payment in full for the purchase price for the warranty. . . ." *See* DE 8-1, at 2. In his complaint, however, plaintiff states that he "paid all invoices sent by Kemper." Compl. at ¶ 57.

[25]    Plaintiff also acknowledges receipt of and relies in part on the Warranty Statement. *See* Pl.'s Disc. Br., Ex. 6, Bates No. 4-9 [DE 31-7].

[26]    Def.'s Interrog. Resp. No. 4 [DE 34-1]; Def.'s Disc. Br., Ex. B, Bates Nos. 69, 74-77 [DE 34-2].

NDL warranty prior to construction on the Project and certainly during construction, his actions "provide strong evidence that []he, in fact, consented to be bound by the terms contained in the [NDL] Warranty, including the arbitration provision." *Carwile v. Samsung Telecomms. Am.*, LLC, 2013 U.S. Dist. LEXIS 185089, at *11 (C.D. Cal. July 9, 2013) (alterations added) (rejecting plaintiff's contention that she was not bound by arbitration provision "because she was unaware of [its] existence . . . when she purchased her phone [and thus] could not have given her consent to be bound by it."); *cf. Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (finding consumer bound by contract's arbitration provision, where consumer had the opportunity to seek copy of contract prior to purchasing product, consulting the vendor's Web site and inspecting documents provided by the vendor). Plaintiff's complaint expressly invokes the benefits of Kemper's "20-year NDL warranty."[27] In fact, plaintiff includes with his complaint a copy of his contract with PCGNY, which provides that PCGNY's work would be "completed based on [Kemper's] requirements for 20 years NDL warranty."[28]

In sum, plaintiff seeks enforcement of one portion of the NDL Warranty – replacement and repair of the alleged defective application to the Project – while seeking to avoid another provision – the arbitration clause. Plaintiff cannot have it both ways. *Aluminium Bahr. B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461, 470 (W.D. Pa. 2014) (explaining a plaintiff cannot "rely[] on the contract when it works to his advantage by establishing the claim, and repudiate[] it when it works to his disadvantage by requiring arbitration") (alterations added; citation omitted). The Court finds, accordingly, that plaintiff is estopped from avoiding the arbitration clause in the NDL Warranty and concludes plaintiff is bound by its terms.

---

[27] Compl. ¶¶ 21, 25, 63, 64.

[28] *Id.*, Ex. B [DE 1-2].

*Sussman v. PCGNY Corp. & Kemper Sys. Am.*
Civil No. 2013-125
Page 11

**B.     The dispute falls within the scope of the arbitration provision**

Having found an enforceable agreement to arbitrate exists between plaintiff and Kemper, the Court next considers whether plaintiff's claims fall within the scope of the arbitration provision. The NDL Warranty's arbitration provision provides as follows:

> Any controversy or claims relating to the System shall be settled exclusively by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"), in the office of the AAA closest to the Structure within the state where the Structure is located, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Ex. A [DE 8-1 at 2]. The NDL Warranty defines "System" as "the Kemperol waterproofing system installed on the Structure," which "shall be free from leaks or seepage through the System to the substrate for a period of 20 years from the Completion Date." *Id*. [DE 8-1 at 1].

"[A]n arbitration clause that uses 'language such as 'any dispute arising out of or *relates to*' the agreement, or disputes that are 'in connection with' the agreement is characterized as broad." *Gillespie v. Colonial Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 26310, at *25 (W.D. Pa. Mar. 30, 2009) (emphasis added; citation omitted); *see also TMG Health Inc., v. Unitedhealth Group, Inc.*, Civ. A. No. 07-115, 2007 U.S. Dist. LEXIS 31423, at *4 (E.D. Pa. Apr. 27, 2007)(language of an arbitration clause providing that "any controversy, claim or dispute arising out of or *relating to*" is of the broadest nature) (emphasis added).

The Court finds that the arbitration clause – which encompasses "[a]ny controversy or claims relating to the System" – is broad and encompasses each of plaintiff's claims. Legal labels aside, the essence of plaintiff's complaint is that Kemper provided an allegedly defective waterproofing system. The factual allegations regarding the defective products necessarily "touch matters" covered by the arbitration clause. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 n.13 (1985) (explaining if the underlying factual allegations in the

complaint "touch matters" covered by the arbitration clause, then those claims are arbitrable, notwithstanding the legal labels for those claims). Moreover, given the phrase "relating to" should be broadly construed, the Court cannot say with the "positive assurance" required of it that plaintiff's claims do not fall within the scope of the arbitration clause. *See Century Indem. Co.*, 584 F.3d at 524 (explaining courts should find that a dispute comes within the scope of an arbitration clause "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

## IV. CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that:

1. Kemper's motion [DE 7] to dismiss the complaint against it and compel arbitration be DENIED IN PART and GRANTED IN PART;

2. Plaintiff's action against Kemper be STAYED in favor of arbitration and the parties be required to follow the dispute resolution procedure in the NDL Warranty;

3. Plaintiff and Kemper jointly advise the Court of the status of this action upon completion of arbitration; and

4. Plaintiff's lawsuit proceed as to the claims against PCGNY.[29]

---

[29] As the Supreme Court explained:

> Federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 (emphasis in original) (footnotes omitted). Nevertheless, "in some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Id.* at 21 n.23; *see American Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) (noting a court may find it appropriate to stay the litigation between non-contracting parties when "questions of fact common to all actions pending in the present matter are likely to be settled during the . . . arbitration"). Here, the claims against PGCNY are independent of those against Kemper, and appear to require separate proofs. As a result, they may be pursued in a separate proceeding in a different forum concurrently with the recommended arbitration proceeding.

Any objections to this Report and Recommendation must be filed in writing within 14 days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated:** February 11, 2015                                S_____
                                                                                    **RUTH MILLER**
                                                                                    United States Magistrate Judge