## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| | ) | |
| **S. DONALD SUSSMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2013-0125** |
| **v.** | ) | |
| | ) | |
| **PCGNY CORP. and KEMPER SYSTEM** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Mark Wilczynski, Esq.,**
St. Thomas, U.S.V.I.
**Lauren Nicole Wright, Esq.,**
Watkinsville, GA
        *For Plaintiff*

**Kyle R. Waldner, Esq.,**
St. Thomas, U.S.V.I.
**Eric Scott Cohen, Esq.,**
New York, NY
        *For Defendant PCGNY, Corp.*

**Maria Tankenson Hodge, Esq.,**
St. Thomas, U.S.V.I.
        *For Defendant Kemper System America, Inc.*

### <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

        THIS MATTER is before the Court on the Report and Recommendation ("R&R") of

Magistrate Judge Ruth Miller (Dkt. No. 44), with respect to the Motion to Dismiss ("Motion to

Dismiss") filed by Defendant Kemper System America, Inc. ("Kemper") (Dkt. No. 7).

Plaintiff S. Donald Sussman ("Sussman") filed this action against PCGNY Corp. ("PCGNY") and Kemper claiming that extensive damage was caused to his real property arising from alleged defects of waterproofing products sold by Kemper and installed by PCGNY. (Dkt. No. 1). Kemper filed its Motion to Dismiss Sussman's claims asserting that all the claims against it were subject to a mandatory arbitration clause contained in a written warranty issued for the Sussman project. (Dkt. Nos. 8; 8-1). After permitting limited discovery relating to whether an arbitration agreement was formed by the parties (Dkt. No. 49-4 at 31-37), the Magistrate Judge recommended that Kemper's Motion to Dismiss be granted in part; that all of Sussman's claims against Kemper be stayed; and that Sussman's claims against Kemper proceed to arbitration under the terms of Kemper's "20-Year NDL Warranty." (Dkt. No. 44 at 12).[1] The Magistrate Judge further recommended that Sussman's claims against PCGNY continue in this forum. *Id.*

Both Sussman and PCGNY filed timely Objections to the Magistrate Judge's R&R. (Dkt. Nos. 47; 48). Kemper filed responses to both Objections. (Dkt. Nos. 49; 50). Sussman and PCGNY filed Replies to Kemper's responses. (Dkt. Nos. 51; 52). For the reasons set forth below, the Court adopts in part, as modified herein, and rejects in part the Magistrate Judge's R&R.

## I.     BACKGROUND

Based upon the original Complaint and information produced during limited discovery, Sussman was planning construction work at his St. John, Virgin Islands property known as Iguana Point in early 2010. (Dkt. No. 1 at ¶ 6). The proposed construction was composed of two phases: the first phase involving the remodeling of various buildings, and the second involving the remodeling of two swimming pools. (Dkt. Nos. 1 at ¶¶ 12-25; 1-2 at 2). Sussman hired architect

---

[1] The document attached to the Motion to Dismiss is entitled "20-Year Premier NDL Limited Warranty and Service Agreement" ("20-Year NDL Warranty"). (Dkt. No. 8-1).

Studio MORSA ("MORSA") and general contractor Geoffrey Miles ("Miles") to design and oversee the work on the project. (Dkt. No. 1 at ¶¶ 6-7).

MORSA's plans for both phases of the Iguana Point Project called for the use of Kemper waterproofing products, and MORSA agents met with Kemper representatives in May 2010 to discuss the Project and Kemper's warranties. (Dkt. Nos. 1 at ¶ 8; 31-1 at 2). According to Miles[2] and Sussman, Kemper products were selected because Kemper offered a 20-year No Dollar Limit (NDL) Warranty. (Dkt. Nos. 31-1, at 3; 45 at 2, 32). Kemper discussed the availability of a warranty in its meeting with MORSA and in emails to Miles. (Dkt. No. 31-1 at 4). By August 2010, Kemper representatives were emailing price lists for its products to Miles for "estimating purposes" as well as providing information about the typical requirements for applying Kemper's waterproofing membranes. (Dkt. No. 31-6 at 2-5).[3]

One of the documents provided to Miles prior to construction was a blank form entitled "Project Approval & Warranty Statement" ("Project Statement"). The Project Statement included a section generally identifying various types of warranties Kemper made available, but it did not provide details about the warranties' protections or conditions. Instead, the Project Statement simply noted, "Refer to Warranty Availability and Fee Schedule for project eligibility description

---

[2] For purposes of the claims involving Kemper, both Sussman and Kemper acknowledge that MORSA and Miles were Sussman's agents with respect to Kemper's transactions related to the Iguana Point Project. (Dkt. Nos. 1 at ¶¶ 6-9; 39-3 at 10).

[3] Both parties attached and relied upon copies of various email communications between Miles and Kemper and/or PCGNY representatives that were sent and received prior to the commencement of this litigation. In its responses to interrogatories, Kemper asserted that the email communications produced during discovery reflected most of the communications between Kemper and Miles. (Dkt. No. 34-1 at 3). Plaintiff does not dispute the authenticity or accuracy of the emails and attached most of the same communications to its post-discovery brief and reply brief. (Dkt. Nos. 31-1; 31-2; 31-5; and 31-6).

of warranties and associated fees." (Dkt. Nos. 31-6; 34-1 at 3). Among the warranties generally identified on the document was a "Premier NDL Warranty/Service Agreement" for periods ranging from 10 to 30 years. (Dkt. No. 31-6 at 5).[4]

The Project Statement also contained a section entitled "Applicator's Project Registration Certification Statement," which required the applicator (installer) of the Kemper materials to certify that the materials were installed according to Kemper's standards. *Id.* at 8. This page carried a disclaimer stating that submitting the form did not constitute approval of the project for warranty purposes and that on-site field inspections by Kemper would be conducted "for the purpose of evaluating eligibility of the project for a warranty." *Id*. It also stated that Kemper "will issue a warranty only under the terms and conditions described in the applicator agreement *and the warranty*." *Id.* (emphasis added) Another section of the document identified as "Information for Warranty" indicated that all information was to be submitted after the project was completed in order to obtain the warranty. *Id.* at 10. Below this certification statement was an area for Kemper's Technical Department to provide "approval" for the warranty. *Id.*

Prior to commencing the Iguana Point Project, Miles contacted various installers approved by Kemper, including PCGNY. PCGNY provided Miles separate proposals for the two phases of the Iguana Point Project in early 2011. (Dkt. Nos. 1 at ¶ 10; 1-2; 1-3). Both proposals asserted that PCGNY's work would be "completed based on Kemper . . . requirements for 20 years NDL

---

[4] At the first hearing, Sussman's counsel asserted that Miles had requested a copy of the Warranty—*after* the Project was completed and after problems arose—in order "to see what it is that we're getting." (Dkt. No. 45 at 13). Counsel also asserted that prior to Kemper's Motion to Dismiss, Sussman had no document describing the Warranty's terms and conditions. Sussman's counsel asserted that Sussman relied on PCGNY, who allegedly stated that Kemper had the best product on the market and that PCGNY could install it in a manner to receive the Kemper 20-year NDL Warranty. (Dkt. No. 45 at 12-14). PCGNY denies this assertion. (Dkt. No. 48 at 3).

warranty." (Dkt. Nos. 1-2; 1-3). Both phases of the project were completed by February or March 2011. (Dkt. Nos. 31-3 at 6; 31-4 at 2).

In November 2012, a local pool company was working with Miles at the Iguana Point pools on deck tile surrounding one of the pools. (Dkt. Nos. at ¶¶ 26-27; 31-3 at 4). In emails to the local pool company, Miles discussed the method for bonding the tile to Kemper's pool membrane and copied his contacts at both Kemper and PCGNY asking for assistance. (Dkt. No. 49-2 at 24). Within several days, an agent from Kemper sent Miles an email with a detailed description of the proper process to complete before applying any tile and emphasized that any work pertaining to the Kemper membrane should be "completed by a trained and approved applicator." *Id.* at 24.

One week later, Miles notified his contacts at Kemper and PCGNY of problems with the Iguana Point pools. (Dkt. No. 49-2 at 25-26). Miles reported that there was cracking along the pool wall of the small pool as well as places in that pool where Kemper's membrane failed to adhere to the pool's surface material or to the surface below the membrane. Miles asserted that the local contractor found that most of the small pool had shown problems and there was evidence of some problems with the large pool. Miles asked Kemper to send a professional inspector to St. John to find a solution. *Id.* at 25-26.

A back-and-forth between the parties via email then ensued. Kemper's agents advised Miles that its records showed it was only a material supplier on the Project and offered to send a Kemper representative if Sussman paid for his time and travel. (Dkt. No. 34-2 at 11-12). In response, Miles asserted that Kemper had provided a 20-year warranty for the work done and that the project was "certified" by Kemper's inspectors. After another review of its records, Kemper asked Miles to provide a copy of the warranty upon which he was relying. (Dkt. No. 49-2 at 44-48). Miles responded by identifying the individuals at Kemper and PCGNY who worked on the

project and reiterated that they expected Kemper to provide coverage under the 20-year warranty. *Id.* at 47-48. These same assertions and responses continued for several weeks. *Id.* at 47-50.

In late November 2012, Miles reported to Kemper that he received a folder when a Kemper representative inspected the project, and that he would look through his files to see if he had a copy of the warranty. *Id.* at 47. Miles did not produce any written warranty but did send to Kemper a copy of a "Field Observation" form prepared by a Kemper agent who inspected the completed project. Miles insisted that the 20-year warranty should be in effect. *Id.* at 50-51. The form stated it was "NOT A WARRANTY" but classified the project's warranty eligibility as "Acceptable." *Id.* at 51.

On December 1, 2012, Attorney W. John Amerling, Esq. sent a letter to Kemper on behalf of Sussman. *Id.* at 54. Attorney Amerling referred to an express, written 20-year warranty; identified the cost of the expected remedial work; and reported that the remedial work was scheduled to begin within the week. *Id.* at 53-55. When Miles followed up in March 2013, Kemper's representative responded that the Warranty was in "the works." *Id.* at 63. A Kemper System "20-Year Premier NDL Limited Warranty & Service Agreement" for Sussman's property was executed by Kemper on April 5, 2013. *Id.* at 74-76.[5]

Approximately six months after the Warranty was issued, Attorney Mark Wilczynski, Esq., representing Sussman, wrote a demand letter to PGCNY and Kemper addressing the Iguana Point Project. (Dkt. No. 49-2 at 77-78). Counsel noted the problems with the pools' waterproofing, Sussman's efforts to resolve the issues, and Kemper's and PCGNY's alleged failure to assist.

---

[5] At the initial hearing, Attorney Wilczynski did not know whether Sussman or his agents ever saw the Warranty prior to the filing of Kemper's Motion to Dismiss. (Dkt. No. 39-3 at 10).

Counsel contended that the problems were due both to Kemper's products and PCGNY's installation. *Id.*

Sussman subsequently filed a Complaint in this Court. (Dkt. No. 1). In the Complaint, Sussman generally referenced Kemper's "express" warranties in paragraphs 9, 29, and 69, and the 20-year NDL Warranty specifically in paragraphs 16, 17, 21, 25, 63 and 64. In lieu of an Answer, Kemper filed a Motion to Dismiss pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 *et seq.*, arguing that all of Sussman's claims against Kemper were subject to arbitration under the written warranty. (Dkt. No. 7) In its Memorandum in Support, Kemper attached a copy of the 20-year Premier NDL Limited Warranted dated April 5, 2013. (Dkt. No. 8-1). Sussman opposed the Motion to Dismiss asserting that the warranty attached to Kemper's Motion was not the warranty "bargained for by Sussman" and that the arbitration clause did not control the contract issues. (Dkt. No. 10 at 1-3). Alternatively, Sussman argued that the arbitration clause did not control his implied warranty claims against Kemper. *Id.* at 3-4.

The Magistrate Judge held a hearing on Kemper's Motion to Dismiss and the parties agreed that the matter had to be reviewed under Rule 56 summary judgment standards. (Dkt. No. 49-3 at 7-8, 17, 25). At the conclusion of the hearing, the Magistrate Judge gave the parties a brief period of time to conduct discovery on the issue of whether an arbitration agreement was formed. (Dkt. No. 49-3 at 38-42). After limited discovery, both Sussman and Kemper filed briefs arguing their positions on the arbitration issue. (Dkt. Nos. 31; 34). Following this briefing, the Magistrate Judge held another hearing. (Dkt. No. 41).

After the second hearing, the Magistrate Judge issued her R&R. (Dkt. No. 44). The Magistrate Judge held that summary judgment standards should be applied and that the issue turned on whether an arbitration agreement existed under "traditional principles" of contract law

in the Virgin Islands. *Id.* at 5, 7-8. The Court analyzed Kemper's argument: that although Sussman did not sign the Warranty containing the arbitration provision, he was equitably estopped from refusing to arbitrate because he "knowingly exploit[ed]" the contract containing the arbitration provision. *Id.* at 7. Magistrate Judge Miller found that the Virgin Islands Supreme Court would adopt the "knowingly exploits" doctrine under the circumstances presented in this case and found in favor of Kemper on this issue. *Id.* at 7-8. Moreover, the Magistrate Judge held that based on Sussman's admissions and the discovery presented, the uncontroverted evidence was that Sussman had accepted and was bound by all the terms of Kemper's written Warranty. *Id.* at 9-10. The Magistrate Judge further concluded that all of the claims asserted against Kemper in Sussman's Complaint—including the breach of implied warranty claims—fell within the scope of the Warranty's arbitration provision. *Id.* at 11-12. The Magistrate Judge recommended that the District Court grant Kemper's request to compel Sussman to proceed through arbitration and that the matter be stayed as to those claims. The Magistrate Judge further recommended that Sussman's action against PCGNY proceed in this forum. *Id.* at 12.

Both Sussman and PCGNY filed timely objections to the Magistrate Judge's R&R. (Dkt. Nos. 47; 48) Kemper filed responses to both parties' objections and Sussman filed a reply to Kemper's response. (Dkt. Nos. 49; 50; 51).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Review of Report and Recommendation

Kemper's Motion to Dismiss was referred to the Magistrate Judge for a Report and Recommendation.[6] When objections to a magistrate judge's report are filed, the court must

---

[6] The Third Circuit has held that a decision to compel arbitration and stay litigation is a non-dispositive matter. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131,

conduct a *de novo* review of the contested portions of the report. 28 U.S.C. § 636(b)(1); *Kennedy v. Borough of Minersville, Pa.*, 2019 WL 4316218, at *1 (M.D. Pa. Sept. 11, 2019) (citing *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)). When conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions in the R&R. 28 U.S.C. § 636(b)(1).

Because timely objections were filed to the Magistrate Judge's factual findings and legal determination that an arbitration agreement was formed, this Court is tasked with determining *de novo* whether—based upon the record before the Magistrate Judge—there were genuine issues of material fact as to whether an enforceable arbitration agreement existed between Sussman and Kemper. Summary judgment motions should be granted where the pleadings, affidavits, and other discovery materials properly before the court demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).

If a genuine issue of material fact exists as to whether there was an agreement to arbitrate, the granting of a motion seeking to compel arbitration is inappropriate. *Id.*; *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009). A trial then is required to determine whether an arbitration agreement exists. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013); *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007); *see also* 9 U.S.C. § 4.

---

134 (3d Cir. 2014). Because Kemper's Motion sought dismissal of the action, however, it is a request for a dispositive ruling under 28 U.S.C. § 626(b)(1)(A)-(B). *See GNH Group, Inc. v. Guggenheim Holdings, L.L.C.*, 2020 WL 4287358, at 1 n.1 (D. Del. July 27, 2020).

B.      **Evaluating Arbitration Agreements**

In its review, the Court must determine whether Magistrate Judge Miller erred in finding, as a matter of law, that the arbitration clause in Kemper's 20-year NDL Warranty applied to Sussman. Because "[a]rbitration is a matter of contract between the parties," an Order requiring the parties to arbitrate must be predicated upon the parties' consent to arbitration. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288-89 (3d Cir. 2017).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, gives courts the authority to enforce a contract to arbitrate. To enforce an arbitration agreement, however, the Court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. While the FAA generally requires that federal courts apply a "presumption in favor of arbitration," this predisposition "does not apply to the determination of *whether* there is a valid agreement to arbitrate between the parties." *Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 130 (3d Cir. 2016) (emphasis added). It is up to the district court to determine whether an arbitration agreement was formed. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2020).

In determining whether an agreement to arbitrate was formed, the Court must use state law contract principles. *Id.*; *Century Indem. Co.*, 584 F.3d at 528-30; *see also Andre v. Dollar Tree Stores, Inc.*, 2018 WL 3323825, at *4 (D. Del. July 6, 2018).[7] Under Virgin Islands law, the

---

[7] The Magistrate Judge concluded, applying Virgin Islands choice-of-law standards, that Virgin Islands contract law should be applied to determine if an arbitration contract had been formed. (Dkt. No. 44 at 7 n. 23). Although the Kemper Warranty referred to the application of New York law (Dkt. No. 7-1 at 2), neither party objected to applying Virgin Islands law under these circumstances. When a party fails to object to a report and recommendation, the Court generally reviews the report and recommendation for plain error. *See Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) ("While . . . [28 U.S.C. § 636(b)(1)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report.") *Blyden v. Wilson*, 2020 WL 4735343, at *1 (D.V.I. Aug. 14, 2020). The

essential prerequisites for the creation of a valid contract are a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Virgin Islands Water & Power Auth. v. General Elec. Int'l*, 51 V.I. 1116, 1121 (D.V.I. 2009) (citing RESTATEMENT (SECOND) OF CONTRACTS § 17). While mutual assent "is sometimes referred to as a 'meeting of the minds,'" this phrase must not be construed too literally. Acceptance is measured not by the parties' subjective intent, but rather by their outward expressions of assent. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (applying Virgin Islands law).

### III.    DISCUSSION

#### A.    Application of Summary Judgment Standards

As his first challenge to the R&R, Sussman asserts that the Magistrate Judge erred in construing the facts and made erroneous inferences in favor of Kemper, the moving party. Sussman correctly asserts that as the nonmoving party, all reasonable inferences from the facts must be drawn in his favor. (Dkt. No. 47 at 3-5).[8] The only specific example of an improper inference that Sussman identifies is the Magistrate Judge's finding that Sussman had the *opportunity* to discover

---

Court finds no plain error in the Magistrate Judge's choice-of-law conclusion and will therefore adopt that determination. *Blyden*, 2020 WL 4735343, at *1.

[8] During the first hearing on the Motion to Dismiss, the Magistrate Judge and the parties agreed that the determination of whether an arbitration agreement was formed between the parties had to be decided using summary judgment standards rather than the standards under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 49-3 at 17, 25-26). After conducting limited discovery, however, Sussman failed to include any affidavits or other evidence—other than the chain of emails—in support of the factual contentions in his briefs. (Dkt. No. 31, 36). Because Sussman was aware that the issue would be considered under Rule 56 standards, the Magistrate Judge refused to permit Sussman to supply affidavits or other supporting evidence after the second hearing. (Dkt. No. 49-4 at 31). Sussman did not object to the Magistrate Judge's discretionary decision not to allow supplemental filings. The Court finds no plain error in the Magistrate Judge's decision in this regard.

the terms of the NDL Warranty prior to, or during, the construction project and failed to do so. (Dkt. No. 47 at 3-4). However, this inference is well-grounded in the facts of record.

The parties do not dispute that a party seeking to compel arbitration "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). All reasonable inferences must be made in favor of the non-moving party. *Fitz v. Islands Mechanical Contractor, Inc.*, 53 V.I. 806, 820 (D.V.I. 2010).

Although Sussman challenges the validity of the April 2013 Warranty that was executed by Kemper and attached to Kemper's Motion to Dismiss, Kemper established through sworn interrogatory answers that its "standard" 20-Year Premier NDL Warranty has contained substantially the same terms for the entire period—before, during and after—the completion of Sussman's construction project. (Dkt. No. 34-1 at 5-6). Those sworn answers also establish that Kemper's written warranty consistently included the same arbitration clause set out in the Warranty attached to Kemper's Motion. *Id.* Notwithstanding the opportunity for discovery, Sussman has failed to present any evidence—only counsel's argument—to contradict Kemper's sworn statements.

Sussman argues that there was no evidence that Kemper ever provided Sussman or his agents a copy of the NDL Warranty before or during the construction project. While there is no such evidence, its absence does not aid Sussman's cause. (Dkt. No. 45 at 15). Based upon Sussman's admissions, he knew through his agents—MORSA and Miles—that there was a 20-

year NDL Warranty available from Kemper. There is no evidence that Sussman or his agents sought to review the terms of the Warranty (or any Kemper warranty) before the transaction. Nor is there any evidence that they were denied access to the terms of the Warranty by Kemper.

Notwithstanding the absence of evidence of Sussman's knowledge of the Warranty's details, there is undisputed evidence that Sussman and his agents repeatedly asserted that the 20-Year NDL Warranty was part of the parties' agreement and in effect after the project was completed. (Dkt. No. 1 at ¶¶ 25, 29, 63-64, 68-69). Sussman's complaint that the Warranty was executed after the project was completed is unfounded because it is clear from the documents in Miles' possession that Kemper's Warranty would be issued only after Kemper inspected the completed project. Moreover, the record reflects that the actual timing of Kemper's execution of the Warranty occurred in the wake of Miles' insistence that the project was covered by a 20-year warranty; his assertion that the project was "certified" by Kemper's inspectors; his production of a "Field Observation" form prepared by a Kemper agent that classified the project's warranty eligibility as "Acceptable;" and a letter to Kemper referencing the 20-year warranty and making a claim thereunder from Sussman's first counsel, Attorney Amerling.

In his Reply Brief, Sussman suggests for the first time, without any support, that the warranty at issue was merely the verbal statements and that the express verbal warranty only required that (1) Sussman use a Kemper-approved installer; and (2) that the installation be reviewed and approved by Kemper. (Dkt. No. 36 at 3). However, this argument is contrary to the Project Statement that Miles received in August 2010 which referenced a Premier NDL Warranty with terms and conditions and directed Miles to a "Warranty Availability and Fee Schedule." (Dkt. No. 31-6 at 1-5). Further, Sussman's letter to Kemper, sent by Attorney Amerling, referred to an express "written" 20-year warranty. (Dkt. No. 31-7 at 2). In addition, at no time in Miles' post-

13

construction emails with Kemper did Miles ever state that the warranty to which he was referencing was a verbal warranty, nor did he question why Kemper was requesting a written copy of the warranty. (Dkt. No. 49-2 at 33-49).

In deciding whether summary judgment is proper, consideration is given to facts in the "*pleadings*, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c) (emphasis added). In this case, Sussman asserted in his Complaint that his agents from MORSA met with Kemper and that a warranty was discussed. (Dkt. No. 1 at ¶¶ 8-9). Sussman also made unequivocal factual assertions that he relied upon Kemper's 20-year NDL Warranty when deciding to purchase Kemper's products, and that he hired a Kemper-authorized contractor in order to obtain Kemper's express warranties. Sussman further asserted that PCGNY's work was specifically required to comply with Kemper's requirements for the 20-year NDL Warranty. (Dkt. No. 1 at ¶¶ 8-10, 16-17, 21). Sussman also specifically alleged that Kemper extended its 20-year NDL warranty to the products it sold to him. *Id.* at ¶¶ 63-68. Even after Kemper sought to dismiss the case, Sussman continued to claim that Kemper provided a 20-year NDL Warranty but argued that he had not agreed to an arbitration provision. (Dkt. No. 10 at 1-2). As there is no evidence of a 20-Year NDL Warranty other than the one executed by Kemper in 2013 and attached to Kemper's Motion, Sussman's admissions undermine his arguments.

Given the significance of the factual allegations made in legal pleadings, especially those initiating an action, those facts are admissions binding on the party asserting them, absent a later amendment. *Sobratti v. Tropical Shipping & Constr. Co., Ltd.*, 267 F. Supp. 2d 455, 462-63 (D.V.I. 2003) (a party is precluded from retreating from a factual claim, which he affirmatively asserted in support of his cause of action, simply to avoid summary judgment). Both the Virgin Islands

Supreme Court and the Third Circuit have made clear that a fact expressly asserted in a Complaint constitutes a judicial admission and is binding on the plaintiff. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("Although [Plaintiff]'s attempt to salvage its unjust enrichment claim now requires that it take a contrary position, the allegation in the amended complaint is a binding judicial admission."); *see also Walters v. Walters,* 60 V.I. 768, 775 n.7 (2014) (adopting the judicial admissions doctrine as Virgin Islands law). Even at the final hearing before the Magistrate Judge, Sussman's attorney admitted that Sussman went into the project wanting Kemper's 20-year Warranty. (Dkt. No. 49-4 at 12-13.)

Discussions regarding the project and construction thereof lasted from early 2010 through February or March 2011. Sussman failed to present any affidavits or other evidence suggesting that Kemper made any express warranties inconsistent with the terms contained in the standard written 20-year NDL Warranty which Kemper has shown existed at the time of the project.[9] Nor has Sussman asserted that he was fraudulently induced to enter into the contract with Kemper based on misrepresentations of the terms and conditions of the 20-year NDL Warranty. Absent such evidence—and in light of the evidence of record discussed above, including Sussman's agents' knowledge of the availability of a 20-year NDL warranty and their representations regarding that warranty—the Magistrate Judge did not err in inferring that Sussman or his agents had the opportunity to discover the terms of the 20-year NDL Warranty prior to or during the construction.

---

[9] Sussman did not present any affidavits from his own agents—Miles or MORSA—or any other evidence that Kemper's warranty was a verbal one or that they reviewed or received a written warranty different from the 20-year NDL Warranty attached to Kemper's Motion to Dismiss and provided in Kemper's discovery responses.

**B.      Mutual Assent/Knowingly Exploits Estoppel**

Even if the Magistrate Judge erred in drawing the inference discussed above in the summary judgment context, this would not alter the conclusion reached here. In her R&R, Magistrate Judge Miller recommends that this Court find that a valid arbitration agreement exists between Sussman and Kemper. (Dkt. No. 44 at 7).

Sussman objects to the Magistrate Judge's R&R asserting that (1) there was no evidence of a "meeting of the minds" regarding the arbitration agreement; and (2) the Magistrate Judge failed to properly determine that Virgin Islands courts would adopt the "knowingly exploits" estoppel doctrine under *Banks v. Intl. Rental & Leasing Corp.*, 55 V.I. 967, 979 (2011). (Dkt. No. 47 at 6-8).[10] Neither of Sussman's objections has merit.

Sussman's assertion that there was no "meeting of the minds" as to the arbitration agreement is not consistent with accepted contract principles in the Virgin Islands. Specifically, Sussman's actions and those of his admitted agents establish that the necessary meeting of the minds existed because their objective actions manifested an assent to the terms of the Warranty. It is well established that:

> [T]he basic elements for what constitutes a valid contract are so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands. In the Virgin Islands, a valid contract requires a "bargain in which there is mutual assent to the exchange, and consideration." Assent is not measured by subjective intent, but by outward expression. In an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration.

---

[10] In *Banks*, the Virgin Islands Supreme Court found that courts must not mechanically follow the Restatements in determining Virgin Islands law, but instead must consider three factors: "'(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.'" *Browne v. Stanley*, 66 V.I. 328, 333 (2017); *see also Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 605 n.1 (2014).

*Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. June 30, 2015) (footnotes and citations omitted); *see also Richardson v. Virgin Islands Port Authority*, 2010 WL 1641154, at *7 (D.V.I. Apr. 21, 2010) (setting forth elements of contract formation under the Restatement (Second) of Contracts).

Here, Sussman claims that the Warranty's arbitration provisions are not supported by "mutual assent" because there was no meeting of the minds relating to arbitration. While Sussman focuses on his subjective lack of knowledge of the Warranty's terms, manifestation of assent to a contract is viewed *objectively*. *See Mason v. IPOS, LLC*, 2019 WL 495595, at *5 (V.I. Super. Feb. 4, 2019) (party's execution of written contract objectively reflects assent to its terms even if plaintiff did not understand arbitration process); *Williams v. Univ. of Virgin Islands*, 2019 WL 301345, at *2 (V.I. Super. Jan. 18, 2019) (manifestation of mutual assent must be proven objectively); *see also Solar Leasing, Inc. v. Hutchinson*, 2019 WL 4576262, at *2 (D.V.I. Sept. 20, 2019) (party who executed a contract that incorporated by reference another contract containing an arbitration clause has objectively assented to terms of incorporated contract); *Siclari v. CBI Acquisitions, LLC*, 2017 WL 5162806, at *2 (D.V.I. Nov. 7, 2017) ("Manifestations of assent may be made through either words or conduct.").[11] Here, given Sussman's clear manifestation of his intent to claim—and indeed demand—the benefits of the Warranty, he cannot

---

[11] While Sussman contends that Kemper's statements regarding its Warranty—made in its sworn interrogatory answers—are self-serving, they are made under penalty of perjury and are not disputed by other evidence. Sussman also has failed to present any evidence that shows that his agents were misled or prevented from learning the terms of the Warranty. Sussman's claims that *he* was not routinely engaged in the construction industry and had no reason to know anything of Kemper's warranties are of no import. (Dkt. No. 36 at 3). In his own pleadings and submissions, Sussman admits that he relied on MORSA and Miles in all of his dealings with Kemper. He also avers that MORSA met with Kemper and discussed its products and warranties. (Dkt. No. 1 at ¶ 9).

be heard to "cherry-pick" those portions of the agreement he deems desirable while exempting himself from others by claiming lack of knowledge.

Further, a party's failure to read a contract is generally no defense to enforcement of the contract's undisputed terms. *See Amvest Corp. v. Anderson Equipment Co.*, 358 F. App'x 344, 348 (3d Cir. 2009). Virgin Islands courts also have long recognized that a party's lack of knowledge of all the written terms of an agreement—even the inclusion of an arbitration clause—is no defense if there has been a clear manifestation of intent to accept the agreement. *See, e.g.*, *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) (applying Virgin Islands law to uphold contract signed by party who could not read English); *Goss v. Sun Constructors, Inc.*, 2011 WL 1627012, at *3 (D.V.I. April 28, 2011) (it was the employee's duty "to ensure he understood the Agreement before signing.").

In short, while Sussman claims that there was no meeting of the minds regarding the arbitration agreement, his actions—through his agents—clearly manifest the mutual assent necessary to the formation of a valid contract. Accordingly, the Magistrate Judge's conclusion that a valid arbitration agreement exists between Kemper and Sussman is well-ground in the facts and the law.

The Court likewise adopts the Magistrate Judge's additional determination that the knowingly exploits doctrine is both consistent with Virgin Islands law and appropriate in this case. Under the "knowingly exploits" theory—also referred to as direct benefits estoppel—a "non-signatory may be bound by an arbitration clause if [he] embraces the agreement and directly benefits from it." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) (finding that the knowingly exploits theory can be used to bind non-signatories to arbitration clauses); *see GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637,

1644-1645 (2020) (applying New York contract law).[12] The benefits must be direct—that is, flowing directly from the agreement. *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001).

Where a signatory to an arbitration agreement attempts to bind a non-signatory, the Third Circuit has recognized that the correct test to be applied is whether "the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199-200 (3d Cir. 2001); *see also Griswold*, 762 F.3d at 271-72 (the knowingly exploits theory prevents non-signatory who seeks to enforce a contract's provisions from excluding any arbitration clause; it prevents non-signatory from "'cherry-picking'" provisions of a contract benefiting them but avoiding other provisions); *HealthplanCRM, LLC v. AvMed, Inc.,* 458 F. Supp. 3d 308, 328 (W.D. Pa. 2020) (non-signatory exploits a contract by "seeking to enforce the terms of that contract or asserting claims based on the contract's other provisions") (citations omitted). This Court also has relied upon the "knowingly exploits" doctrine in *Fitz v. Islands Mechanical Contractor, Inc.*, 53 V.I. 806, 820 (D.V.I. 2010) (plaintiffs who claimed that they were entitled to wage rate set out in written agreement were estopped from asserting that the arbitration provision in that agreement was not binding).

Sussman objects, asserting that there is no clear showing that the Virgin Islands would adopt the knowingly exploits doctrine and argues that the Magistrate Judge failed to fully analyze

---

[12] *See also Elsasser v. DV Trading, LLC*, 444 F.Supp.3d 916, 929 (N.D. Ill. 2020) (shareholder in a company could not avoid an arbitration clause in company's franchise agreement with the defendant due to direct benefits estoppel); *HealthplanCRM, LLC v. AvMed, Inc.,* 458 F. Supp. 3d at 328; *Bruckner Truck Sales, Inc. v. Hoist Liftruck Mfg., LLC*, ___ F. Supp. 3d ___, 2020 WL 6799179, at *10 (N.D. Tex. Nov. 19, 2020).

the acceptance of that doctrine under all the factors set forth in *Banks*, 55 V.I. at 979. The Court

notes, however, that recent opinions from the Superior Court have recognized the use of the third-

party beneficiary theory—a related theory by which non-signatories can enforce or be bound by

arbitration agreements. *See Hendricks v. Pinnacle Services, LLC*, 72 V.I. 630, 2020 WL 1358955,

at *3-4 (V.I. Super. Mar. 16, 2020) (arbitration agreement may be invoked by non-signatory which

was an intended third-party beneficiary of employment contract containing the arbitration clause);

*Williams v. Groundwater & Environmental Serv., Inc.*, 72 V.I. 331, 2020 WL 814414, at *2 (V.I.

Super. Jan 8, 2020) (citing *E.I. DuPont de Nemours & Co.*, 269 F.3d at 195) (same).[13] Based upon

these decisions, the Court concludes that if Virgin Islands courts would recognize the ability of

third parties to invoke an arbitration clause contained in a contract between two other parties, they

would accept the knowingly exploits theory to support the enforcement of an arbitration provision

against a non-signatory who is a party to the contract and who actively seeks the benefits of that

contract.[14]

For the foregoing reasons, the Court adopts—based on both the proof of mutual assent and

the "knowingly exploits" theory of equitable estoppel—Magistrate Judge Miller's conclusion that

there was no genuine issue of material fact that an agreement was formed and that Sussman was

---

[13] Courts have also recognized that this third-party beneficiary doctrine may be used to bind non-signatory parties to an arbitration agreement. *See, e.g.*, *Massa v. Michael Ridard Hospitality LLC*, 2020 WL 4810747, at *2 (Fla. App. Aug. 19, 2020) (non-signatory may be bound to arbitration agreement if the non-signatory is specifically the intended third-party beneficiary of the contract); *Dailey v. Borough of Highlands*, 2020 WL 6297469, at *3 (N.J. Super. App. Oct. 28, 2020) (non-signatory of a contract may be subject to arbitration if the non-signatory is a third-party beneficiary of contract); *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1255, 1271 (Pa. Super. 2004).

[14] Sussman has offered nothing that suggests to the contrary.

bound by the terms of the arbitration provision set forth in Kemper's Standard 20-year NDL Warranty.[15]

### C.     Sussman's Estoppel Argument

In his final objection to the R&R, Sussman contends that the Magistrate Judge erred in failing to address his argument that Kemper should be estopped from asserting its right to arbitration based upon the Warranty presented—which was executed after Kemper initially denied that a warranty was issued. (Dkt. No. 47 at 8-9). Sussman argues that he relied on Kemper's denials of any warranty to have another contractor complete substantial repair work on the pools and is prejudiced by Kemper's attempt to rely on a subsequently issued warranty that requires arbitration. *Id.* Sussman states that he made this argument during the hearing on the Motion to Dismiss. *Id.*

Arguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived. Likewise, a "passing reference to an issue" does not suffice to preserve it for review by the district court. *See Bell v. City of Harrisburg*, 457 F. App'x 164, 167 (3d Cir. 2012) (district court correctly found that party did not adequately raise constitutional claims by making a passing reference to them in its briefing and not otherwise substantively raising it prior to objecting to the magistrate's Report and Recommendation); *Easterday v. USPack Logistics, LLC*, 2020 WL 7137859, at *4 (D.N.J. Dec. 4, 2020) (arguments not raised before the magistrate judge or made only in a passing reference does not preserve the argument); *cf. In re National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1,*

---

[15] Sussman did not specifically object to the Magistrate Judge's conclusion that the broad scope of the Warranty's arbitration provision included all of Sussman's claims against Kemper, including the implied warranty claims. In the absence of an objection to this conclusion, the Court has reviewed this issue and finds that the Magistrate Judge's holding on this point was not plain error and will therefore adopt that determination. *Blyden*, 2020 WL 4735343, at *1.

*2005-2, 2005-3*, 971 F.3d 433, 444 (3d Cir. 2020) (citing rule but rejecting appellant's argument because the "passing issue" took up an entire section of the written submissions and was, therefore, adequately raised before magistrate judge).

A review of the record reflects that Sussman did not raise this equitable estoppel argument in his initial written response to the Motion to Dismiss. (Dkt. No. 10). Sussman's attorney raised this issue only in passing during his rebuttal arguments in the hearing on the Motion to Dismiss. (Dkt. No. 49-3 at 26). This "argument"—which was devoid of any legal analysis or citation to authorities—constituted one paragraph composed of seven lines and 84 words out of 40 pages of transcript.[16] At the conclusion of this hearing the Magistrate Judge deferred ruling on the Motion, permitted the parties to conduct limited discovery, and directed the parties to thereafter brief the issue of whether an arbitration agreement was formed using summary judgment standards. (Dkt. No. 49-3 at 38-42).

After the completion of discovery, the parties engaged in briefing on the question of whether an arbitration agreement was formed, followed by a second hearing before the Magistrate Judge. At no time—including in Sussman's initial brief, his reply brief, or during oral argument— did Sussman argue that Kemper should be equitably estopped from relying on the Warranty or the arbitration provision contained therein. (Dkt. Nos. 31, at 3-7; 36; 46, at 11-20). Sussman cannot be heard to raise it now. *Easterday*, 2020 WL 7137859, at *4.

---

[16] Sussman's counsel stated:

> "And for us to be equitably estopped, it seems disingenuous to say that Kemper should also not be equitably estopped from asserting that that warranty is there when their own managing director said after the contract was over, there is no warranty. And now suddenly there is one six months later after all the work is done and the only thing that's coming now is getting some money. Boom, here, this is our warranty. I don't think so. It's not a warranty at all."

(Dkt. No. 45 at 26).

Based on the foregoing, the Court concludes that Sussman failed to sufficiently assert his claim of equitable estoppel before the Magistrate Judge. His counsel's passing reference—made only in the first hearing on the Motion to Dismiss—is inadequate to preserve the matter for this Court's review. Accordingly, this Court declines to address this issue.

### D. PCGNY's Objections

Co-Defendant PCGNY also objected to Magistrate Judge Miller's R&R. (Dkt. No. 48). PCGNY asserts that the Magistrate Judge made factual findings relating to the relationship between PCGNY and Sussman which are not essential to the Court's ultimate determination and recommendation relating to Sussman's claims against Kemper. PCGNY objects to any factual findings that purport to establish any relationship between PCGNY and Sussman. (Dkt. No. 48 at 4-5).[17]

PCGNY did not respond to the other parties' original pleadings relating to arbitration. After the supplemental briefing by Kemper and Sussman, PCGNY sent a letter to the Magistrate Judge stating it took no position on the arbitration dispute between those parties. PCGNY did request, however, that the Magistrate Judge make no factual findings in her R&R that might be binding on PCGNY. (Dkt. No. 35).

In its Objection to the R&R, PCGNY objects to three of the factual findings made by Magistrate Judge Miller. (Dkt. No. 48 at 4-5). Those findings were statements that "[P]laintiff entered into a contract with PCGNY Corp." in January 2011; that Kemper did not issue a warranty immediately upon completion of the Project because "PCGNY had failed to register it with

---

[17] Also pending before the Court is PCGNY's Motion to Dismiss Sussman's claims against it for failure to state a claim against PCGNY. (Dkt. No. 13). PCGNY's Motion to Dismiss was not referred to the Magistrate Judge for an R&R and will be addressed separately by the Court.

Kemper's technical department;" and that Sussman's Complaint includes a "copy of Sussman's contract with PCGNY." (Dkt. No. 44 at 3-4, 10). PCGNY asserts that the Magistrate Judge's factual findings essentially denies its Motion to Dismiss for Failure to State a claim which she lacked authority to address under 28 U.S.C. § 636(b). (Dkt. No. 48 at 5-7). PCGNY further asserts that because it was not a party to Kemper's arbitration motion or the arbitration clause in dispute, it is not bound by the Magistrate Judge's findings. *Id*. at 7-9.

In its Reply, Kemper opposes PCGNY's challenges to any factual findings made by the Magistrate Judge. (Dkt. No. 50). Kemper asserts that PCGNY, at both hearings on the arbitration issue, stated that it did not "reject, adopt or take any position" on statements from either Sussman or Kemper. (Dkt. No. 37 at 1). Kemper also disputes PCGNY's contention that the R&R in any way adjudicates PCGNY's Motion to Dismiss. *Id.* at 2.

The Court agrees with PCGNY's Objections in that the three specific findings identified were not necessary to the resolution of Kemper's Motion and could be construed to address issues raised in PCGNY's pending Motion to Dismiss. Accordingly, the Magistrate Judge's R&R is rejected as to these findings and this Court's decision excludes those specific determinations.

## IV.   CONCLUSION

For the foregoing reasons, the Court adopts in part, as modified herein, Magistrate Judge Miller's R&R as to Kemper's Motion to Dismiss and rejects in part the R&R to the extent that it includes three factual findings to which PCGNY objects. An appropriate Order accompanies this Memorandum Opinion.

Dated:  December 28, 2020                                    _____/s/_____
                                                            WILMA A. LEWIS
                                                            Chief Judge